Ruffin, C. J.
 

 The testator, Casper Stultz, made his will on the 1st day of April 1840, and amongst others, he therein made the following gifts ; “ To my wife I give a negro woman, Yiolet, and if said negro woman should have any increase, and my wile thinks proper to have her sold, she is to have the interest of the money said negro brings, to apply to whatever use she sees proper, till her death, and at her death to be equally divided between my children as the remainder of my property hereinafter mentioned. I give to my daughter Anne, wife ,of Henry Shouse, a negro girl by the name of Caroline., and her increase, and $1150, which is in a bond for the store, and the said Henry Shouse is to pay my wife $10 per annum, during her life. I give to my daughter Christina, wife of John Kiser, a negro girl by the name of Maria, and her increase, and the plantation on which they now live, by said John Kiser giving my wife 20 bushels of corn and one good wagon load of hay, per an-num, as long as she lives, and at the death of both' of them,
 
 *542
 
 the said negro girl and her increase to fail to the heirs of Christina. I give to my son Daniel, four negroes, named, &c. and $1150, which is in a bond of him and Shouse.— j wju anq bequeath that the remainder of my property be sold and equally divided among my heirs, as the law directs.” By a codicil, dated the 12th of July, 1841, the testator says, “ as I have sold the tract of land, which I willed to the heirs of my son John, I now will that the heirs of him have $700 each, to be put to interest till they come of age, and the interest applied to raising and schooling said children, and the remainder, if any, paid to them with the principal, when they come of age.” The testator died in December 1841.
 

 The bill states, that, before the making of his will, the testator had been in partnership in merchandize with his son-in-law Shouse, and his son Daniel, and had sold to them his interest for $2300, for which he took their bond ; and that, at the date of the will, some interest had accrued thereon, and that it, and what subsequently accrued up to the testator’s death, remained unpaid. And one of the questions for the advice of the court is, whether the interest in question belongs to the donees of the several sums of $1150 in that bond, or falls into the residue.
 

 We think the interest is part of the residue. A bequest of a note or bond, being specific, carries every thing due
 
 on
 
 it, whether principal or interest, The entire
 
 corpus
 
 is given.
 
 Perry
 
 v Maxwell, 2 Dev. Eq. 507. It is very possible it might have been the purpose of the testator, by the gifts of the different parts of the principal money due on this bond, to the respective parties, who gave the bond to extinguish the debt, as well the intent as the principal. But we cannot say that he has expressed such an intention. He does not give an aliquot part, as an aliquot part, of the bond to the respective legatees, but only a certain sum of money
 
 in
 
 this bond. Whether the legacies be regarded as specific, to the extent of the sums named, or as demonstrative merely, we are not au
 
 *543
 
 thorized to give more than the amounts of money
 
 in numero.
 

 The bill further states, that, between the date of the will and the death of the testator, the woman Yiolet, given to the widow, had a child, and also that the women given to Mrs. Shouse and Mrs. Kiser, had four children each, some of whom were born before the date of the will, and others between that day and the death of the testator. And the opinion of the court is asked whether, under thé several dispositions of the will, the issue of the women, or any of them, go with their mothers to the particular devisees respectively, or form part of the residue. Here again, though it may probably be defeating the testator’s expectations, we must hold, that the gifts of the mothers pass only the issue born after the death of the testator, and that the children, born at any time before the testator died, fall into the general residue.— In
 
 Jones
 
 v
 
 Jones,
 
 Conf. Rep. 310, it was decided, that a specific bequest of a female slave did not pass a child born after the execution of the will in the life time of the testatrix; because the will only spoke from her death. The word “ increase,” which this testator uses in each of these dispositions, will not remove the difficulty. We admit it to be equivocal in its sense, and there have been several cases, in which, by the addition of “ future,” or other like word of reference, the disposition has carried the children born after the execution of the will. Indeed, in
 
 Bullock
 
 v Bullock,
 
 2
 
 Dev. Eq. 307, and in another case, under the word “increase,” coupled with words of reference to the possession by the donee of the mother at and before the execution of the will, the court felt justified, upon the apparent intent, in Holding that the legatee took the issue as well as the mother, of which the donee thus had the possession before and at the execution of the will. But there must be some expression in the will thus to carry back the operation of “ increase” to a period anterior to the death of the testator. Unassisted, it passes only the issue born after that event.
 
 Cole
 
 v Cole,1 Ired. 460.
 

 
 *544
 
 The bill further states, that the testator had a son named John, who died in the life-time of his father, leaving two
 
 in-
 
 ^ant who are the persons mentioned in the codicil, to whom the legacy of $700, each, is given, and that a question has arisen, whether that provision in the codicil does not exclude those children from a share of the residue. — . Upon that question, pur opinion is clear in the negative.— We are at a loss to conjecture a ground on which the doubt could be raised. Independent of the general principle, that gifts by separate instruments are
 
 prima facie
 
 cumulative, unless in the one paper there be terms of revocation of the other, there are other reasons entirely convincing in this case, that the legacies in the codicil and in the residuary clause of the will are cumulative. In the'first place, they are of different natures, the one being a pecuniary legacy
 
 in
 
 numero, and the other an uncertain residuary disposition_
 
 Masters
 
 v
 
 Masters,
 
 1 Pr. Wms. 423.. And1 particularly in. the next place, the legacies .in the codicil are given, not in substitution of all the provisions- made by the testator for these two grand-children, but ar-e substituted as is specially expressed in the codicil, for a particular provision for them in land, which the testator afterwards sold-. To each of his children he makes particular devises and bequests, and then gives them a share of the residue, by the general description of!imy heirs,” thereby including also the two children of his deceased son. For them he had also provided, by devising to them land'; and'afterwards selling it, he gives in its stead $700 to each of the grand-children, thus leaving the residuary disposition in their favor in full- force.
 
 Ridges
 
 v
 
 Morrison,
 
 1 Bro. C. C. 388.
 

 The bill further states, that “the plantation,” on which Kiser lived at the execution of the will, consisted of a tract of iand' containing 70 or 80 acres only, but that the testator had other laud's adjoining, out of which he had a tract surveyed containing 179 acres, and including that of 70 or SO acres; which he at' one time intended to convey to Kiser':
 
 *545
 
 That he executed a deed- therefor by signing and sealing it and having it attested, but never delivered the same, but purposely withheld it, and that, after the death of the testator, Kiser contrived to get possession of the deed, and had it registered. Upon which the bill states, that most of the residuary legatees insist, that the devise of “ the plantation” carries only the smaller tract of 70 or 80 acres,and that the residue of the land eovered by the deed is a part of the residue of the estate : And asks the advice of the Court thereon, and prays that Kiser'i mayjbe compelled to surrender the deed and convey to such persons as may purchase the land.
 

 The answer of Kiser denies that the testator did not deliver the deed, and says he delivered it to one of the plaintiffs for him, Kiser, whereby it became valid, as a conveyance, in the life-time of the testator, and that the plaintiff, after the death of the testator, handed the deed to this defendant, — . And he insists further, that, at the date of the will, he was, by his testator’s consent, in possession of the whole tract of 179 acres, and cultivating different parts of it, as well without as within the 80 acre tract, and that the whole was used by him and known by the testator as his “plantation,” and by the description the testator intended the whole to pass by his will. Some others of the defendants by their answers controvert the facts as stated by Kiser, and affirm the allegations of the bill.-
 

 Upon these pleadings the court cannot give an opinion on this last controversy, since, before the proper construction of the will ean be declared, the facts in regard to the subject, to which the will applies, must be ascertained. Upon a bill by trustees or executors seeking the advice of the court for their security, we cannot undertake to determine the facts, because we only give an answer to the questions arising upon the facts declared by the trustee. Therefore when he tells us in his bill, that the facts are disputed, we can only
 
 *546
 
 say to him that he has come too soon for our opinion, and ^at he cannot get it, until he shall lay the case before us, as it is, upon which the Court is to declare the law. In present state of the pleadings, therefore, we must decline giving any opinion on this point.
 

 Pee. Curiam. Declared accordingly.